UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LAWRENCE BLEERS,

      Plaintiff,

v.                                      Case No: 2:19-cv-806-SPC-NPM

WAL-MART STORES EAST,
LP,

      Defendant.
_____/

## OPINION AND ORDER[1]

Before the Court is Defendant Wal-Mart Stores East, LP's Motion for Final Summary Judgment (Doc. 37). Plaintiff Lawrence Bleers responded in opposition (Doc. 42) and Walmart replied (Doc. 43). Also here is the briefing on Walmart's Motion in Limine. (Docs. 36; 39). The Court grants summary judgment and denies the other motion as moot.

## DISCUSSION

This is a slip and fall case. Bleers and his wife went to Walmart. While walking down a main aisle, Bleers slipped and fell. He did not see anything on the ground. But after, his wife took pictures of where she believed he slipped:

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.



([Doc. 42-4 at 3](Doc. 42-4 at 3)). Another customer witnessed the fall. And a Walmart employee made a written statement.

Nobody could say where the liquid came from. Nor did they know how long it was there. Based on testimony of the customer and employee, Walmart believes it came from a specific motorized cart, which a woman drove through the area minutes before Bleers fell (the "Cart Lady"). At the same time, Bleers both denies the Cart Lady created the condition and relies on her actions to support his theory of liability. The parties provided two surveillance camera videos. Neither shows liquid on the ground or how it spilled. When those videos clearly contradict testimony provided though, the Court relies on the video. *E.g.*, *Buckman v. Morris*, 736 F. App'x 852, 853 (11th Cir. 2018).

Bleers received treatment for various injuries. Eventually, he sued for negligence. Now, Walmart moves for summary judgment.

## LEGAL STANDARD

Sitting in diversity, the Court applies Florida substantive and federal procedural law. *Global Quest, LLC v. Horizon Yachts Inc.*, 849 F.3d 1022, 1027 (11th Cir. 2017). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a material fact is in genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden to show the lack of genuinely disputed material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If carried, the burden shifts onto the nonmoving party to point out a genuine dispute. *Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2018). At this stage, courts view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002).

So what's a reasonable inference? It must be more than "a guess or a possibility, for such an inference is not based on the evidence but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1982) (cleaned up). The inference must be "one that

reasonable and fair-minded [people] in the exercise of impartial judgment might draw from the evidence." *Id.* at 1326 (cleaned up). On this point, many state-court cases are misleading because they bar stacking or pyramiding inferences. But federal courts do not necessarily care about stacked inferences. Rather, the question is whether they are reasonable. *Id.* at 1323-24 ("According to federal law there is no prohibition against pyramiding inferences; instead all inferences are permissible so long as they are reasonable.").[2] To be sure, the ultimate inference becomes more "attenuated" with each layer stacked. *Salter v. Westra*, 904 F.2d 1517, 1525 & n.13 (11th Cir. 1990). Yet this does not bar building an inferential house of cards—no matter the state court's summary judgment standard.

## DISCUSSION

Slip and falls are a form of negligence, so plaintiffs must show duty, breach, causation, and damages. *Oliver v. Winn-Dixie Stores, Inc.*, 291 So. 3d 126, 128 (Fla. Dist. Ct. App. 2020). Businesses owe invitees two duties: (1) to keep the premises reasonably safe; and (2) to warn of dangers the business knew (or should have known) about that the invitee couldn't discover. *Norman v. DCI Biologicals Dunedin, LLC*, 301 So. 3d 425, 428 (Fla. Dist. Ct. App. 2020). In these premises liability cases, a business must have "actual or constructive

---

[2] *See also Cora Pub, Inc. v. Cont'l Cas. Co.*, 619 F.2d 482, 485-86 (5th Cir. 1980); *Berbridge v. Sam's E., Inc.*, 728 F. App'x 929, 931-32 (11th Cir. 2018).

4

knowledge of the dangerous condition." Fla. Stat. § 768.0755(1). And the burden is on plaintiff to make that notice showing. *Encarnacion v. Lifemark Hosps. of Fla.*, 211 So. 3d 275, 278 (Fla. Dist. Ct. App. 2017).

Walmart challenges Bleers' evidence on notice. Because it wins on that argument, the Court need not reach any others.

To start, Walmart did not have actual notice. "Actual knowledge of a dangerous condition exists when a business owner's employees or agents know of or create the dangerous condition." *Palavicini v. Wal-Mart Stores E., LP*, 787 F. App'x 1007, 1010 (11th Cir. 2019). In passing, Bleers mentions Walmart had actual notice. But he neither makes argument nor cites evidence to support that theory. The Court will not do so on his behalf. Fed. R. Civ. P. 56(e). No evidence supports a reasonable inference of actual notice anyway. So the inquiry turns to constructive notice.

Under certain conditions, plaintiff can support an inference for a business' constructive knowledge of a dangerous condition. *Berbridge*, 728 F. App'x at 930. Plaintiffs make that showing in one of two ways:

> (a) The dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition; or
>
> (b) The condition occurred with regularity and was therefore foreseeable.

Fla. Stat. § 768.0755(1)(a)-(b). The evidence offered may be circumstantial. *Id.*

5

In three years before Bleers' incident, no slip and falls occurred in the relevant area. And Bleers presents no evidence of any regularity for this condition. With that theory out the window, the issue narrows to whether evidence supports a reasonable inference the liquid was on the ground long enough that Walmart (exercising care) should have known about it. Fla. Stat. § 768.0755(1)(a). On this record, the answer is no. So summary judgment is appropriate. *See Borroto v. Wal-Mart Stores, E., LP*, No. 2:19-cv-356-FtM-38NPM, 2020 WL 6591193, at *3-5 (M.D. Fla. Nov. 10, 2020).

At first, the parties dispute whether Bleers slipped on the liquid shown above. Viewing the evidence most favorably to Bleers, the Court assumes he did. Yet the simple fact plaintiff slipped on liquid is not evidence the condition existed for any meaningful length of time. *Velez v. Home Depot USA, Inc.*, No. 13-81306-CIV-MARRA/MATTHEWMAN, 2015 WL 11256563, at *2 (S.D. Fla. Mar. 12, 2015) ("Negligence cannot be assumed by proving merely that an accident occurred." (citation omitted)).

In Florida, "the mere presence of water on the floor is not enough to establish constructive notice." *Delgado v. Laundromax, Inc.*, 65 So. 3d 1087, 1090 (Fla. Dist. Ct. App. 2011); *see also Pussinen v. Target Corp.*, 731 F. App'x 936, 937 (11th Cir. 2018). So "the record must contain additional facts to create a permissible inference regarding the amount of time the water had been on the floor." *Palavicini*, 787 F. App'x at 1013. Evidence for "signs of age" like

"dirt, scuffing, or tracks in a substance" can do the trick. *Berbridge*, 728 F. App'x at 930 (citations omitted). "If a plaintiff does not identify evidence to suggest the length of time that a liquid was on the floor, there is no genuine dispute of material fact, and a defendant is entitled to summary judgment." *Espinoza v. Target Corp.*, 843 F. App'x 168, 171 (11th Cir. 2021).

Bleers identifies nothing from which anyone could reasonably infer how long the liquid was on the floor. Consistent with the picture, people testified the liquid looked "like tracked up muddy water"; not "completely clear"; "grayish, clear grayish with something mixed in"; and an "oily substance, like a white liquid with black swirls." (Docs. 42-5 at 33; 42-6 at 14; 37-2 at 44; 37-3 at 47-48). That said, nobody knew what the liquid was, how long it was there, or where it came from. In other words, no witness can testify what the liquid looked like when spilled. Someone guessed it was water; another assumed it was water, milk, or juice; and Bleers' wife could not say what it was. Yet no evidence supports an inference the liquid was discolored from being on a ground for a period. This scuttles Bleers' argument there was constructive notice based on the liquid's color. *Berbridge*, 728 F. App'x at 932-34 (rejecting notice when "there was no evidence that the liquid substance was not already dark and dirty when it reached defendant's floor" (cleaned up)); *Encarnacion*, 211 So. 3d at 278 (holding there must be a "plus" fact for reasonable jury to

conclude liquid, "in its original condition, was not oily, dirty and dark" (cleaned up)).

Even if a jury could reasonably infer the liquid became dark or discolored while on the ground, there is no evidence to conclude the condition existed for enough time to impute knowledge. The people who thought the liquid might have been water, milk, or juice (i.e., clear or light-colored liquids) testified it perhaps leaked from the Cart Lady. She drove over the exact spot Bleers slipped. And she made a sort of U-turn, which jibes with other testimony of a U-shaped trail. But the Cart Lady passed through the area just two minutes and eight seconds before the incident. No employee was nearby in the interim, so any condition caused by the Cart Lady could not have existed for long enough to impute knowledge onto Walmart. *E.g.*, *Hernandez v. Sam's E., Inc.*, No. 20-CV-61648-RAR, 2021 WL 1647887, at \*3, 5 & n.8 (S.D. Fla. Apr. 26, 2021) (holding less than ten minutes an insufficient length of time).[3]

Bleers tries to create a dispute over which cart the witness discussed, pointing out a few other others drove through the area shortly before his incident. Yet the video and testimony betray his position. There was only one

---

[3] *See also Pussinen*, 731 F. App'x at 938 (fifteen minutes); *Hill v. Ross Dress for Less, Inc.*, No. 12-23368-CIV, 2013 WL 6190435, at \*5 (S.D. Fla. Nov. 26, 2013) (ten minutes); *Straube v Moran Foods, LLC*, No. 8:16-cv-49-T-24 AEP, 2016 WL 6246539, at \*2 (M.D. Fla. Oct. 25, 2016) (seven-odd minutes); *Walker v. Winn-Dixie Stores, Inc.*, 160 So. 909, 912 (Fla. Dist. Ct. App. 2014) (four minutes).

motorized cart around the time of the fall: the Cart Lady.[4] That was the person to which the witness referred. (Doc. 40-5 at 13-14 ("I remember she was on a Walmart cart, coming out that third aisle . . . . And that's when he fell."), 23-24). To the extent that Bleers relies on an employee's testimony, it is unavailing. The employee did not know where the liquid came from, but assumed it was water leaked by the Cart Lady because he heard coworkers say that. (Doc. 42-5 at 23-24). Even if testimony on secondhand facts were proper, it was clear the employee referred to the same woman. (Doc. 42-5 at 29 ("But right after the electric cart rolled by, the next customer that walked by slipped a little, they caught theirself, and they kept going. And then that's when the person that fell came through." (errors in original)).[5]

As for Bleers' argument on other facts commonly used to establish age (e.g., tracks, footprints, and condition), they all fail. Two are easy to address. Bleers' wife saw a footprint in the liquid. But she didn't know if it was from Bleers or not. She also said the liquid was "quite thick" and did not appear to be drying. (Doc. 37-3 at 49). Neither condition suggests the liquid was on the ground for long. *Palavicini*, 787 F. App'x at 1012 ("There is no evidence of

---

[4] She stopped near the area at 1:33:51. She crossed the spot Bleers fell at 1:33:56. And she was in a side aisle near that spot until just before he fell at 1:35:59. All times refer to Walmart's video Exhibit D, which it provided by DVD.

[5] This describes the events on video. Less than a minute after the Cart Lady stopped, a man walked over that spot and slipped. A minute and a half later, Bleers fell.

9

footprints, . . . drying of the liquid, or other evidence that would tend to show that the liquid was on the floor for an amount of time sufficient to impute constructive notice."). The third requires closer inspection.

Bleers contends liquid trails near the area establish constructive notice. Not so. At most, there is testimony of liquid trails from the Cart Lady near the incident. But no witness could connect those trails to the area Bleers slipped. And again, if they could, the Cart Lady left them less than three minutes before the fall. The case Bleers relies on is unconvincing. There, plaintiff slipped on a grape that was crusty, shriveled, and brown. [Reina-Leon v. Home Depot U.S.A. Inc., No. 8:18-cv-2262-T-33AEP, 2019 WL 1745378, at \*3 (M.D. Fla. Apr. 18, 2019)](). That was enough for constructive notice alone. But *Reina* noted other evidence strengthened the inference (i.e., "the floor was really dirty" and had discarded packaging lying around). [Id.]() Here, no evidence suggests the spill that caused the fall was on the ground for any length of time. So the condition of other aisles does not buttress notice like *Reina*.

To the extent that Bleers guesses someone else left the trails in other aisles, nothing about them suggests they existed for long enough to impute knowledge. A witness testified there were no track marks in the trails she saw near the spot of the incident. ([Doc. 42-6 at 14]()). At the time, an employee provided a statement saying he saw "a water trail through the pharmacy from the cosmetics department with wheel tracks in it." ([Doc. 42-7 at 12]()). That

written statement is not in the record, but (more important) there is no suggestion how close that liquid was to where Bleers fell. And at his deposition, the employee could not remember seeing any liquid trails. (Doc. 42-5 at 26, 33). So a jury could only speculate where the trail was located and how it related to the spot Bleers slipped.

What's more, neither party identified when the employee saw the liquid. This is relevant because he did not see Bleers fall and apparently arrived on scene sometime after. Yet several people walked through the area of the incident between Bleers' fall and his wife investigating closer (presumably to take the pictures). One person pushed a cart into the general area within seconds of the fall. None of this includes the customers and employees who swarmed the surrounding area after Bleers fell. Many pushed and drove carts down nearly each aisle near the relevant area. *See Espinoza v. Target Corp., No. 9:19-cv-81108-ROSENBERG/REINHART, 2020 WL 2813134, at \*5 (S.D. Fla. May 29, 2020)*, *aff'd on other grounds*, 843 F. App'x 168. In short, Bleers has shown no signs of age to support a reasonable inference for constructive notice of the condition that caused his fall.

Finally, the parties dispute the conclusion to draw from an employee walking through the area six minutes before the fall. Walmart contends she inspected the area. It relies on a video and interrogatory answer.

The video is unhelpful. While it shows the employee walking through the area, she did not clearly inspect anything. The Court cannot blindly assume Walmart employees are carrying out their inspection responsibilities when a video provided does not plainly depict them looking at the ground. *[Shaw v. City of Selma](...)*, 884 F.3d 1093, 1097 n.1 (11th Cir. 2018) ("But where the recording does not clearly depict an event or action, and there is evidence going both ways on it, we take the [nonmovant's] version."). Even if it could, the Court will not make the inferential leap to say the employee (who never provided a statement) saw nothing. *Ballesteros v. Wal-Mart Stores E., LP*, No. 2:19-cv-881-SPC-NPM, 2021 WL 1737452, at *3 (M.D. Fla. May 3, 2021).

Likewise, the interrogatory isn't determinative. A store manager prepared the response. He said the employee inspected the area and saw no liquid. Yet there is no foundation for the manager providing that fact. *See* (Doc. 42-7 at 13-14, 24). A corporate representative answering interrogatories need not personally know the facts. *Jiminez-Carillo v. Autopart Int'l, Inc.*, 285 F.R.D. 668, 669-70 (S.D. Fla. 2012). Yet—when used to support summary judgment—interrogatories must "satisfy the other requirements in Rule 56 and contain admissible material." 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2722 (4th ed. 2021) (footnote omitted);

*Johnson v. Holder*, 700 F.3d 979, 982 (7th Cir. 2012).[6] Walmart made no showing the manager knew about an inspection or its results. So at best, this interrogatory response is hearsay. At worst, it is rank speculation. The Court won't consider anything that stinky. *See Johnson v. Gestamp Ala., LLC*, 946 F. Supp. 2d 1180, 1196-97 (N.D. Ala. 2013).

That said, however, the presence of an employee in the area six minutes before the incident is not evidence the condition existed at that time and should have been discovered. *Palavicini*, 787 F. App'x at 1012-13. Fifteen people passed through the area between that employee and Bleers—including the Cart Lady who perhaps created the condition. So on its own, the employee walking through the area does not suggest the condition existed for long enough it should have been discovered. *Id.*; *see also Ayers v. Wal-Mart Stores, E., LP*, No. 15-24663-CIV-GAYLES, 2017 WL 747541, at *2-3 (S.D. Fla. Feb. 27, 2017).

At bottom, Bleers needs evidence to support a reasonable inference that Walmart had constructive notice of the liquid. On that point, all Bleers could ask the jury to do is make guesses off hunches. That shot-in-the-dark showing cannot survive summary judgment. *E.g.*, *Nieves v. Wal-Mart Stores E., LP*, No.

---

[6] *See also Bagwell v. Peachtree Doors & Windows, Inc.*, No. 2:08-CV-191-RWS-SSC, 2011 WL 1497831, at *6 (N.D. Ga. Feb. 8, 2011) (collecting cases); *In re Thomas*, No. 18-10041-KKS, 2020 WL 4000866, at *1 (Bankr. N.D. Fla. Feb. 3, 2020); *EarthCam, Inc. v. OxBlue Corp.*, 49 F. Supp. 3d 1210, 1220 n.7 (N.D. Ga. 2014).

2:19-cv-00474-JLB-NPM, 2020 WL 6161474, at *5 (M.D. Fla. Oct. 21, 2020). Because summary judgment is proper, the Court need not decide Walmart's Motion in Limine.

Accordingly, it is now

**ORDERED:**

(1) Defendant's Motion for Final Summary Judgment (Doc. 37) is **GRANTED**.

(2) Defendant's Omnibus Motion in Limine (Doc. 36) is **DENIED as moot**.

(3) The Clerk is **DIRECTED** to enter judgment, terminate all pending motions or deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on May 25, 2021.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record